IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TONI CHAVES, | § | |
| | § | |
| *Plaintiff,* | § | SA-19-CV-00861-ESC |
| | § | |
| vs. | § | |
| | § | |
| COGENT MEDICAL LABORATORY, | § | |
| LLC, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER GRANTING FINAL DEFAULT JUDGMENT

Before the Court in the above-styled cause of action is Plaintiff Toni Chaves's Motion for Entry of Final Default Judgment as to Cogent Medical Laboratory, LLC and Memorandum in Support Thereof [#34]. The undersigned has jurisdiction to enter this order due to the consent of both parties to the jurisdiction of a United States Magistrate Judge [#9, #10]. For the reasons set forth below, the Court will grant the motion.

## I.  Jurisdiction

This court has federal-question jurisdiction over this action under 28 U.S.C. § 1331 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). (Am. Compl. [#22] at ¶ 3.3.)

## II.  Procedural History

Plaintiff Toni Chaves filed this action against her former employer, Cogent Medical Laboratory, LLG, on July 18, 2019, alleging that Defendant failed to compensate her in compliance with the overtime requirements of the FLSA. Defendant timely filed an Answer to Plaintiff's Complaint, and a Scheduling Order was entered to control the course of this case.

1

Plaintiff moved for leave to amend her pleadings, which was granted, and filed an Amended Complaint against Defendant on January 31, 2020, adding a claim for FLSA retaliation.

Shortly thereafter, Defendant's counsel, Michael V. Galo, Jr., moved to withdraw his representation due to Defendant's lack of responsiveness to any communication from counsel and a past due balance with counsel's law firm. Because Defendant, as an LLC, cannot represent itself in federal court, the Court ordered Mr. Galo to formally advise Defendant of the risks associated with the withdrawal. Mr. Galo provided the Court with a sealed copy of a letter sent to Defendant, advising Defendant that it must find substitute counsel or face the possibility of a default judgment, and the Court permitted Mr. Galo to withdraw. The Court also ordered Defendant to file an advisory on or before March 18, 2020 indicating whether it had obtained substitute counsel.

No advisory was filed, and Defendant has not obtained new counsel or filed an answer or other responsive pleading to Plaintiff's Amended Complaint. On April 15, 2020, Plaintiff moved for and obtained a clerk's entry of default against Defendant. On June 26, 2020, Plaintiff filed the motion for final default judgment currently before the Court. Plaintiff's motion for final default judgment asks the Court to award her the following relief: (a) unpaid overtime wages in the amount of $5,801.25; (b) liquidated damages for unpaid overtime in the amount of $5,801.25; (c) lost wages for retaliatory discharge in the amount of $21,239.00; (d) liquidated damages for lost wages due to retaliatory discharge in the amount of $21,139.00; (e) punitive damages in the amount of $21,139.00; (f) attorneys' fees and costs in the amount of $16,287.50; and (g) post-judgment interest thereon at the rate provided for in 28 U.S.C. § 1961.

In order to ensure that Defendant received proper notice of these court filings and an opportunity to cure its default prior to the issuance of a final default judgment, the Court ordered

the District Clerk to mail a copy of the Clerk's Entry of Default and Motion for Default Judgment by first class and certified mail, return receipt requested.  The Order required Defendant to file a response to the motion for default judgment on or before July 13, 2020, to avoid final default [#35].

The certified mail receipt confirms that a copy of the Clerk's entry of default, Plaintiff's motion for final default judgment, and the Court's order for a response was mailed to Defendant at its last known address of record c/o Robert Gates on June 30, 2020.  There is no indication that the mailing was returned as undeliverable; however, the certified mail receipt has not yet been returned confirming delivery.  Nonetheless, the undersigned will grant Plaintiff's motion for default judgment.  Defendant has had numerous opportunities to find substitute counsel to represent it in this action and has been notified as to the risks associated with failing to do so by its former counsel and this Court on multiple occasions.  Defendant has not filed a response to Plaintiff's motion, filed an answer to Plaintiff's Amended Complaint, or obtained substitute counsel to represent it in this action, and all of the Court's deadlines to do so have expired.

### III.  Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion by the plaintiff.  *See* Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint (except regarding damages) but must determine whether those facts state a claim upon which relief may be granted.  *See Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (stating

that a defaulting party is deemed to have admitted all well-pleaded allegations of the complaint); *United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Thus, for a plaintiff to obtain a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) ("[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.") (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

## IV. Analysis

The record in this case establishes that Defendant failed to plead or otherwise defend against Plaintiff's claims since the withdrawal of its counsel, as an LLC cannot represent itself *pro se* in this action. *See Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) ("Although 28 U.S.C. § 1654 authorizes individuals to appear in federal courts pro se, the statute is silent regarding corporations. The lack of authorization in § 1654 has been interpreted as barring corporations from appearing in federal court without an attorney."); *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms, . . . a limited liability company also may appear in federal court only through a licensed attorney.") (internal citations omitted). The undersigned therefore finds that the Clerk properly entered default, and Plaintiff is entitled to default judgment because the facts alleged in Plaintiff's Complaint state a claim upon which relief can be granted.

Plaintiff's First Amended Complaint alleges the following: Plaintiff was hired as a phlebotomist for Defendant, a medical testing laboratory providing mobile phlebotomy services, and also performed work assignment and scheduling duties for Defendant. (Am. Compl. [#22] at

¶ 5.)   According to Plaintiff's Amended Complaint, Defendant is an employer withing the meaning of the FLSA and is an enterprise engaged in commerce within the meaning of the FLSA by using equipment that has traveled in interstate commerce, such as medical specimens, laboratory testing equipment, and computers.  (*Id.* at ¶ 4.)

Attached to Plaintiff's motion for default judgment is also the declaration of Plaintiff, which states that she was hired by Robert Gates, Defendant's CEO, as a phlebotomist on March 15, 2019, and worked for Defendant until June 18, 2019, a period of 13 weeks.  (Decl. [#34-1] at ¶ 4.)  Plaintiff's Amended Complaint alleges she was paid on an hourly basis at the rate of $17.00 per hour plus $0.33 per mile.  (Am. Compl. [#22] at ¶ 5.)  Her duties were working as a mobile phlebotomist, inputting time records for other phlebotomists, compiling tracking sheets for phlebotomists, and compiling draw stats for the phlebotomists.  (Decl. [#34-1] at ¶ 5.)

Plaintiff also acted as dispatch for the mobile phlebotomy division, receiving and dispatching requests for services.  (*Id.*)  Plaintiff claims she was required to be on-duty and on-call 24 hours a day and was frequently required to perform her work assignment and scheduling duties after normal business hours.  (Am. Compl. [#22] at ¶ 5.)  Plaintiff alleges she was never paid overtime compensation for hours worked over 40 in a given workweek and was not paid for all of the time she spent assigning and scheduling work for Defendant.  (*Id.*)  Plaintiff estimates that she worked 15 to 20 extra hours over her normal 40 each week, work that she performed "off the clock" and was not recorded per instruction from management.  (Decl. [#34-1] at ¶ 6.) Plaintiff claims that she complained to management—and to Robert Gates specifically—that she was not being compensated for all hours worked, including overtime hours, and that she was subsequently fired because of her complaints.  (Am. Compl. [#22] at ¶ 5; Decl. [#34-1] at ¶ 8.)

Following her termination, Plaintiff looked for a new job and began work at Alpha Medical Labs on August 6, 2019. (Decl. [#34-1] at ¶ 9.) Plaintiff was therefore out of work for more than six weeks, during which she collected $2,688 in unemployment benefits. (*Id.*) Plaintiff's current position is at Alpha Medical Labs, where she averages wages of approximately $750 week, less than the wages she earned working for Defendant. (*Id.* at ¶ 10.)

A.      **Plaintiff's Amended Complaint states violations of the FLSA.**

The FLSA mandates minimum wage and overtime compensation for employees who are (1) "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a); *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992). Plaintiff alleges that Defendant falls under the enterprise coverage provision of the FLSA. (Am. Compl. [#22] at ¶ 4.) The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1) (emphasis added). Plaintiff alleges that Defendant was a covered enterprise under the FLSA because at all material times it was engaged in commerce or in the production of goods for commerce, as its medical testing equipment was transported in interstate commerce. (Am. Compl. [#2] at ¶ 4.) Plaintiff further alleges that Defendant has an annual gross volume of sales made or business done of not less than $500,000. (*Id.*) Taking these

6

allegations as true for purposes of Plaintiff's motion for default judgment, Plaintiff has established that the FLSA applied to her employment with Defendant.

Plaintiffs' Amended Complaint also alleges sufficient facts to establish that Defendant violated the FLSA's overtime compensation and anti-retaliation provisions. Section 207(a) of the FLSA prohibits any covered employer from requiring its employees to work more than 40 hours in a given workweek unless the employee receives overtime compensation for such hours at a rate of not less than one and one-half times the employee's regular rate. 29 U.S.C. § 207(a). Section 215(a)(3) of the FLSA prohibits a covered employee from discharging any employee because the employee has filed a complaint related to the Act. 29 U.S.C. § 213(a)(3). The well-pleaded facts in Plaintiffs' Amended Complaint, and supporting statements from Plaintiff's declaration, state violations of both of these provisions of the FLSA.

Plaintiff alleges that she was required to be on call and to perform duties after normal working hours, that she was forced to work "off the clock," and that she was not paid for all the time she spent assigning and scheduling for Defendant. (Am. Compl. [#22] at ¶ 5.) Plaintiff also alleges that she complained about the violations of the FLSA and was terminated as a result. (*Id.*) Plaintiff's Amended Complaint asserts two causes of action based on these allegations— both a claim for failure to pay overtime compensation and a claim for unlawful retaliation. (*Id.* at ¶¶ 6–7.)

To prevail on her claim that Defendant violated the overtime compensation provisions of the FLSA, in addition to proving an employer-employee relationship and enterprise coverage, Plaintiff must simply establish that Defendant violated the FLSA's overtime wage requirements and paid her less than the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Plaintiff's Amended Complaint, taken as

true, establishes that Defendant failed to pay her all of the overtime compensation she is due. The undersigned will address Plaintiff's entitlement to damages *infra* at Section IV.B.

To prevail on her claim that Defendant violated the FLSA's anti-retaliation provision, Plaintiff must prove the same prima facie case that is required to prove a Title VII retaliation claim. *See Sternes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Plaintiff must therefore establish that she participated in a protected activity under the FLSA; that an adverse employment action occurred; and that there is a causal link between the activity and the adverse action. *Id.* at 631–32. If Plaintiff meets this preliminary burden, the burden shifts to Defendant to produce evidence of a legitimate, non-retaliatory basis for the adverse action. *Id.* at 632. If Defendant does so, the burden shifts back to Plaintiff to identify evidence from which a jury could conclude that the proffered reason is pretext for retaliation. *Id.*

Here, Plaintiff has established that she participated in a protected activity under the FLSA, complaining of a violation of the FLSA's overtime compensation provision to management. The Fifth Circuit has held that an informal, internal complaint constitutes protected activity under the FLSA. *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 626 (5th Cir. 2008). Plaintiff also has established that an adverse employment action occurred—her termination from employment. *See Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996). Finally, Plaintiff has established the requisite causal link between her complaints of an FLSA violation and her termination, as she alleges that she was demoted shortly after she began complaining about her lack of pay and then was ultimately fired. (Chaves Decl. [#34-1] at ¶ 8.) Plaintiff attaches to her declaration one of her complaints to management about her additional duties, a text message exchange with Gates dated June 3, 2019, in which Plaintiff said her duties

were "difficult" and she was "exhausted."  (Text Message [#34-1] at 137.)  She was fired just a couple of weeks after this complaint was submitted, on June 18, 2019.  (Chaves Decl. [#34-1] at ¶ 8.)  In this Circuit, temporal proximity between protected activity and alleged retaliation is enough to establish causation, so long as the protected act and adverse employment action are very close in time.  *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015) (finding six-and-a-half-week timeframe between protected activity and adverse action sufficient to satisfy causation prong of prima facie case); *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (finding two-year period insufficient to establish causal connection).  Plaintiff only worked for Defendant for 13 weeks and has made allegations of close temporal proximity between her complaints, demotion, and termination.  As Defendant has not defended this action, it has not proffered any non-retaliatory reason for Plaintiff's discharge, and Plaintiff has established Defendant's retaliation in violation of the FLSA.

**B.    Plaintiff's declaration establishes her entitlement to damages.**

Rule 55(b) provides a court with discretion to convene an evidentiary hearing on the issue of damages.  Fed. R. Civ. P. 55(b)(2).  When a party seeks default judgment, damages ordinarily may not be awarded "without a hearing or a demonstration by detailed affidavits establishing the necessary facts."  *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).  However, where the amount of damages can be "determined with certainty by reference to the pleadings and supporting documents," and where a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing."  *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993) (a district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment).  Having reviewed Plaintiff's declaration and supporting exhibits, the undersigned finds that an evidentiary hearing to determine damages

is unnecessary.  *See Fauzi v. Royal Hospitality Servs., LLC*, 2016 WL 3167080, at *2 (S.D. Miss. June 6, 2016) (explaining that hearing on damages was not required because affidavits filed with the court adequately demonstrated movant's entitlement to damages).

      i.      <u>Plaintiff is entitled to $5,801.25 in unpaid overtime compensation.</u>

As for the amount of Plaintiff's actual damages with respect to her wage violation claim, Plaintiff's declaration states that she worked for 13 full weeks for Defendant, from March 15, 2019 to June 18, 2019, and was paid $17.00 per hour.  (Chaves Decl. [#34-1] at ¶ 4.)  Plaintiff further states that she worked 15 to 20 extra hours over her normal 40-hour workweek each week on her extra "off the clock" duties.  (*Id.* at ¶ 6.)  Because these hours were not recorded, Plaintiff seeks overtime compensation for 17.50 hours per week, the average of the estimated 15 to 20 hours she worked off the clock each week.  (*Id.*)  Such approximation of hours worked are acceptable when there are no time records available.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 1946).  Plaintiff therefore calculates that she is owed 227.50 hours of overtime compensation (13 weeks x 17.50).  (*Id.* at ¶ 7.)  For each hour of unpaid overtime compensation, Plaintiff is entitled to pay at a time-and-a-half rate.  29 U.S.C. § 207(a)(1).  Plaintiff is therefore seeking unpaid overtime compensation in the amount of $5,801.25 as her actual damages for her FLSA wage violation claim ($17.00 x 1.50 x 227.50).  (Chaves Decl. [#34-1] at ¶ 7.)  Plaintiff has established that she is entitled to this amount in unpaid overtime compensation.

      ii.      <u>Plaintiff is entitled to an equal amount in liquidated damages.</u>

Under the FLSA, an employer who violates the Act's overtime provisions is liable not only for unpaid compensation but also for an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).  An employer can avoid the assessment of liquidated damages by satisfying the "substantial burden" of demonstrating good faith and a reasonable belief that its actions did not

violate the FLSA.  *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003).  Plaintiff's declaration states that her manager Robert Gates knew she was working hours in excess of 40 hours per week and that she complained to him numerous times in person and on the phone about her failure to be compensated for this time.  (Chaves Decl. [#34-1] at ¶ 8.)  As Defendant has not responded or defended this action, it has not established a good faith reasonable belief in FLSA compliance.  Accordingly, Plaintiff is also entitled to liquidated damages under the FLSA in an amount equal to her unpaid compensation.

      iii.    <u>Plaintiff is entitled to lost wages and liquidated damages stemming from her retaliatory discharge.</u>

Any employer who violates the provisions of the FLSA prohibiting retaliation "shall be liable for . . . the payment of wages lost and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).  Plaintiff's declaration states that she secured a new job approximately six weeks after her termination at Alpha Medical Labs.  (Chaves Decl. [#34-1] at ¶ 8.)  During the period in which Plaintiff was out of work from June 19, 2019 to August 6, 2019, Plaintiff collected $2,688 in unemployment benefits.  (*Id.*)  For these six weeks, Plaintiff seeks the amount she should have been paid and rightfully earned during her employment with Defendant ($1,126.25 per week x 6 weeks) less her unemployment benefits ($2,688.00) for a total of $4,069.50.  (Chaves Decl. [#34-1] at ¶ 10.)  Plaintiff also seeks lost wages for her current lesser income from August 6, 2019 to the date the motion for default judgment was filed, a period of 46 weeks.  The Court will extend these lost wages to the date it issues final judgment, a period of 55 weeks.  Plaintiff's declaration states that at Alpha Medical Labs, she initially made approximately $753 per week, but in March 2020 her payment changed to include part hourly wage and part commissions per specimen she collected so that her average wages are now $750 per week.  (*Id.* at ¶ 10.)  Accordingly, Plaintiff calculates her lost wages for her current lesser

income by multiplying 55 weeks by the difference between her rightful pay from Defendant ($1,126.25) and her weekly pay at Alpha Medical Labs ($753).   Plaintiff calculates her lost wages for this period as $20,528.75 (55 x $373.25), for a total of $24,598.25 in lost wages. Plaintiff is entitled to an equal amount in liquidated damages. 29 U.S.C. § 216(b).

        iv.      <u>Plaintiff has not established an entitlement to punitive damages.</u>

Plaintiff also asks for punitive damages to punish Defendant's retaliatory conduct.  The Fifth Circuit has not yet ruled on whether punitive damages are available for retaliation under the FLSA, and there is a split among the Circuit Courts of Appeals on this issue.  *Compare Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 734 (7th Cir. 1998) (punitive damages available in FLSA retaliation cases) *with Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000) (punitive damages not available).  Some district courts have in the past concluded that the Fifth Circuit is unlikely to allow for punitive damages under the FLSA in light of the Circuit's holding that such damages are unavailable under the ADEA.  *See Douglas v. Mission Chevrolet*, 757 F. Supp. 2d 637, 640 (W.D. Tex. 2010) (citing *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977)).  Yet, the Fifth Circuit has since held that emotional distress damages are available in FLSA cases and implicitly rejected the application of *Dean*'s ADEA-based holding in the FLSA context.  *See Pineda v. JTCH Apartments, LLC*, 843 F.3d 1062, 1066 (5th Cir. 2016).  Plaintiff argues that this Court should award her punitive damages in an equal amount to her lost wages, in light of *Pineda*'s holding.  In light of the lack of clarity on the issue of whether punitive damages are available to Plaintiff in this case and the posture of this case as a default judgment, the Court declines to award punitive damages.

        v.      <u>Plaintiff is entitled to recover her reasonable attorney's fees and costs.</u>

12

Plaintiff asks the Court to award her reasonable attorney's fees and costs as the prevailing party in this suit. Under the Fair Labor Standards Act, the District Court must award reasonable attorney's fees to the prevailing party. *See* 29 U.S.C. § 216(b) ("The court in [an FLSA case] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 & n.7 (5th Cir. 2006) (noting that reasonable fees should be awarded to "prevailing party" even though the FLSA's text does not use that term). District courts use the lodestar method to calculate an appropriate fee award under the FLSA by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work. *Saizan*, 448 F.3d at 799. A plaintiff seeking attorney's fees is "charged with the burden of showing the reasonableness of the hours billed" and also that he or she "exercised billing judgment." *Id.* "Billing judgment requires documentation "of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* The remedy for a lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Reasonable hourly rates are determined based on prevailing rates for attorneys of similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). There is a strong presumption that the lodestar amount is reasonable. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Given the nature of claims under the FLSA, it is not uncommon that fee requests exceed the amount of judgment in a case by many multiples. *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 Fed. App'x 341, 342 (5th Cir. 2007).

After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 717–19.  "[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved, and the result obtained, and the experience, reputation and ability of counsel." *Saizan*, 448 F.3d at 800, (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998)). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Id.*

Plaintiff requests a total of $15,822.50 in attorney's fees for the work of two attorneys on this case.  Attached to Plaintiff's motion for default judgment is a declaration by Plaintiff's counsel with attached supporting documentation regarding the time expended on this litigation and counsel's expertise.  Lead attorney Chris R. Miltenberger, founder of the Law Office of Chris R. Miltenberger, PLLC, states that he expended nine hours of work on this case at an hourly rate of $375, a rate 30 percent below that charged to his fee-paying clients.  (Miltenberger Decl. [#34-2] at ¶¶ 4, 11.)  Mr. Miltenberger has been in practice for almost 40 years, with a

14

practice in the area of labor and employment law for over 25 years.  (C.V. [#34-2] at 11.)  The second attorney on this case, Rebecca Miltenberger, expended 38.30 hours of time on this matter at an hourly rate of $325 per hour.  (Miltenberger Decl. [#34-2] at ¶ 5.)

As for the hourly rate requested by Plaintiff's counsel, the Court has explained on multiple occasions, the State Bar of Texas periodically produces a report, titled Attorney Hourly Fact Sheet ("Rate Report"), which details the median hourly rates for Texas attorneys, broken down by city, specialty, firm size, and years of practice, among other factors.  The current version of the Rate Report is for the year 2015, which lists a median rate of $258 for labor and employment attorneys practicing in the San Antonio area.  *See* State Bar of Texas, 2015 Attorney Hourly Fact Sheet, available at: https://www.texasbar.com/AM/Template.cfm?Section=Archives (last visited August 27, 2020). "Judges in the San Antonio Division regularly take judicial notice of the Rate Report." *Rodriguez v. Mech. Tech. Servs., Inc*., No. 1:12-CV-710-DAE, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015) (collecting cases).  These median rates are the starting point for evaluating the reasonableness of a requested rate but must be adjusted to account for other factors, including the nature and complexity of the litigation, the billing attorneys' specific credentials, and the size of the billing attorneys' firm. *See Furlow*, 2019 WL 1313470, at *3.  Plaintiff, as the party seeking attorney's fees, bears the burden of establishing the reasonableness of the amounts claimed. *See Riley v. City of Jackson, Miss*., 99 F.3d 757, 760 (5th Cir. 1996).

Mr. Miltenberger has extensive experience in the area of labor and employment litigation and is the founding partner of his Dallas-based firm where there are two practicing attorneys. (Miltenberger Decl. [#34-2] at ¶ 2.)  Mr. Miltenberger was also a past partner at the Dallas-based firm of Worsham, Forsythe & Wooldridge, now Hunton Andrews Kurth LLP.  (*Id.* at ¶ 4.)  Mr.

Miltenberger's declaration indicates that he has already reduced his hourly rate for purposes of this litigation significantly. (*Id.* at ¶ 11.) Counsel has also provided the Court with a chart detailing various rulings regarding fee rates in other employment cases within the Western District of Texas, demonstrating that approved rates span from $225 to $750 per hour. (Chart [#34-2] at 18.) In light of these factors, the Court therefore finds that Mr. Miltenberger's claimed hourly rate of $375 is reasonable.

The Court also finds Ms. Miltenberger's hourly rate of $325 to be reasonable. Ms. Miltenberger's C.V. indicates that she has also practiced law for almost 40 years and has practiced labor and employment law with Mr. Miltenberger since 2013. (C.V. [#34-2] at 14.) Ms. Miltenberger's claimed rate is not excessive when compared to other fee awards in this District and the Hourly Fact Sheet published by the State Bar of Texas.

As to the time expended by Plaintiff's counsel, the billing records attached to Plaintiff's motion indicate that counsel began working on this case file in July 2019. (Billing Records [#34-2] at 58.) Before Defendant's counsel withdrew his representation, Plaintiff's counsel engaged in early discovery and participated in a Rule 26 conference and other initial court conferences. (*Id.*) Yet, the majority of billing entries in this case relate to work on the motion for default judgment that is currently before the Court. Plaintiff's counsel collectively expended 37.3 hours researching, drafting, and filing the motion. (*Id.*) Although counsel's declaration indicates that he and Ms. Miltenberger both exercised billing judgment in eliminating time for duplicative or redundant tasks (Miltenberger Decl. [#34-2] at ¶ 18), the Court finds the amount of time billed to be excessive under the circumstances. This is a relatively straightforward FLSA action. The overwhelming majority of work performed on this case involved drafting an uncontested motion for default judgment. The majority of exhibits attached to the motion

concern the reasonableness of fees and are declarations and attachments that counsel would have used in previous cases and therefore required only minimal editing for use in this case. The Court will therefore reduce the requested amount of fees by 30 percent based on the *Johnson* factors highlighted above. The issues presented by this case are neither novel nor difficult. *See Johnson*, 488 F.2d at 717–19. The Court will therefore award Plaintiff fees in the amount of $11,075.75 rather than the $15,822.50 requested.

Finally, Plaintiff also seeks costs in the amount of $465.00 for the filing fee in this case ($400.00) and a private process service fee at the rate equal to that charged by the United States Marshal ($65.00). Plaintiff indicates she will file a bill of costs in the form required by the Clerk of Court.

According to Rule 54(d) of the Federal Rules of Civil Procedure, costs shall be allowed as a matter of course to the prevailing party in a civil action. However, not all expenses incurred by a party can be reimbursed. *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010). Pursuant to 28 U.S.C. § 1920, a judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. *Id.* Courts may decline to award costs permitted by Section 1920, but they may not award costs that are not specifically listed in the statute. *Id.* The party seeking recovery of its costs bears the burden of proving the amount and necessity of its costs. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64

(5th Cir. 1994).  Plaintiff's requested costs, the $400.00 initial filing fee and the process server fee at the U.S. Marshal rate, are both recoverable.  *See Honestech, Inc.*, 725 F. Supp. 2d at 585 (limiting process server fees to the rate of the U.S. Marshal).

      vi.      <u>Plaintiff is entitled to post-judgment interest.</u>

Plaintiff also asks the Court to award her post-judgment interest to accrue at the rate provided for in 28 U.S.C. § 1961 from the date of final judgment to the date of payment.  Post-judgment interest shall be allowed on any money judgment in a civil case recovered in district court.  28 U.S.C. § 1961(a).  The Court will therefore include an award of post-judgment interest in the final judgment issued in this case.

### V.  Conclusion

Having considered Plaintiff's motion, the case file, and the lack of response from Defendant,

**IT IS HEREBY ORDERED** that Plaintiff Toni Chaves's Motion for Entry of Final Default Judgment as to Cogent Medical Laboratory, LLC and Memorandum in Support Thereof [#34] be **GRANTED IN PART** as detailed herein.  A final default judgment will be entered separately.

**IT IS FURTHER ORDERED** that in all other respects, Plaintiff's Motion [#34] is **DENIED**.

SIGNED this 28th day of August, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE